25CA1501 Peo in Interest of Wolfe 11-13-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1501
Pueblo County District Court No. 25MH30072
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Elliot Robert Wolfe,

Respondent-Appellant.

---

ORDER AFFIRMED

Division II
Opinion by JUDGE MEIRINK
Fox and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 13, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1 Respondent, Elliot Robert Wolfe, appeals the district court order authorizing staff at the Colorado Mental Health Hospital in Pueblo (CMHHIP) to medicate him involuntarily. We affirm.

## I. Background

¶ 2 Wolfe was admitted to CMHHIP after being found incompetent to proceed to trial on criminal charges. According to the affidavit of Dr. Hareesh Pillai, Wolfe's treating physician, Wolfe has a history of mental illness and prior psychiatric hospitalizations. He is diagnosed with unspecified mood disorder.

¶ 3 CMHHIP began administering psychiatric medications to Wolfe on an emergency basis after his screaming, threats, and posturing required intervention from security staff. The People then petitioned for a six-month order authorizing the continued involuntary administration of three medications: Zyprexa, Depakote, and Thorazine.

¶ 4 At the evidentiary hearing, Dr. Pillai testified that an involuntary medication order was warranted under *Medina* because (1) Wolfe is incompetent to effectively participate in his treatment decisions; (2) the requested medications are necessary to prevent a significant and likely long-term deterioration in his mental health

1

condition and to prevent the likelihood that he would pose a serious risk of harm to others; (3) a less intrusive treatment alternative is not available; and (4) Wolfe's need for treatment with psychiatric medications outweighs any bona fide interest in refusing treatment.[1]  *See People v. Medina,* 705 P.2d 961, 973 (Colo. 1985). The district court found that Dr. Pillai's testimony was credible and persuasive and adopted his opinions.

¶ 5     Wolfe testified that he objected to taking psychiatric medication and to the corresponding blood draws because he suffers from various side effects and is a Jehovah's Witness.  The district court found Wolfe's testimony to be credible as to a few of his alleged side effects — specifically, jitteriness, tremors, and blurry vision — and as to his religious beliefs.  Though the court found that Wolfe had expressed bona fide and legitimate reasons to

---

[1] When the state seeks to administer antipsychotic drugs to a mentally ill criminal defendant involuntarily so that she can stand trial, a reviewing court applies the Supreme Court's test in *Sell v. United States*, 539 U.S. 166, 178 (2003).  However, reviewing courts apply state law tests if the state, as here, seeks to administer antipsychotics involuntarily for "a different purpose," including a purpose "related to the individual's dangerousness, or . . . the individual's own interests where refusal to take drugs puts his health gravely at risk."  *Id.* at 181-82.

refuse medication, it also found that his prognosis without treatment was so unfavorable that his personal preference must yield to the interests of the State.

¶ 6    The court ultimately concluded that the People provided clear and convincing evidence for each *Medina* element. It issued an order authorizing CMHHIP staff to administer all of the requested medications.

## II.    Discussion

¶ 7    On appeal, Wolfe challenges the sufficiency of the evidence for only the fourth *Medina* element — whether his need for treatment is sufficiently compelling to override his bona fide and legitimate interest in refusing treatment. *See id.* He argues that because the district court found that the People had not presented clear and convincing evidence that treatment was necessary to prevent harm to others (under the second *Medina* element), it afforded too much weight to the State's interests versus his interests in refusing medication. We conclude that the record provides ample support for the district court's findings and legal conclusion on this element.

3

## A. Standard of Review and Legal Authority

¶ 8 When a patient challenges the sufficiency of the evidence supporting the district court's findings on any of the *Medina* elements, we review the record as a whole and, viewing it in the light most favorable to the People, determine whether the evidence is sufficient to support the court's decision. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23. We review the court's conclusions of law de novo and defer to its findings of fact if supported by evidence in the record. *People v. Marquardt*, 2016 CO 4, ¶ 8. We also defer to the district court's resolution of evidentiary conflicts and its determinations of witness credibility, the weight of the evidence, and the inferences to be drawn from it. *See People in Interest of R.C.*, 2019 COA 99M, ¶ 7. A physician's testimony alone may constitute clear and convincing evidence. *See People v. Pflugbeil*, 834 P.2d 843, 846-47 (Colo. App. 1992).

¶ 9 In assessing the sufficiency of evidence for the fourth *Medina* element, a court must determine (1) "whether the patient's refusal is bona fide and legitimate" and, if so, (2) "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in

preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Medina*, 705 P.2d at 974.

B.    Sufficient Evidence of Fourth *Medina* Element

¶ 10    Wolfe challenges the district court's finding that his prognosis without treatment is so unfavorable that his interest in refusing medication must yield to the State's interests in preserving his health and in protecting the safety of those in CMHHIP. Dr. Pillai's testimony supports this finding.

¶ 11    Dr. Pillai testified that without treatment, Wolfe was likely to suffer a significant and long-term deterioration of his mental condition, exhibiting symptoms including disorganized thinking, mania, irritability, impulsivity, aggression, pressured speech, and poor sleep. Specifically, without the requested medications, "Wolfe is unable to safely control his behaviors, and becomes extremely agitated." Despite two weeks on emergency medications, Wolfe showed several of the symptoms listed by Dr. Pillai and demonstrated his lack of self-control when he interrupted the evidentiary hearing multiple times.

5

¶ 12    Dr. Pillai also opined that Wolfe posed a risk of harm to others at CMHHIP, based on his screaming, posturing, and threats (although he had not actually struck anyone at CMHHIP). He further testified that the credible side effects alleged by Wolfe may simply be resolved with continued use of the prescribed medications.

¶ 13    Based on this evidence, the district court found that Wolfe's need for treatment was sufficiently compelling to override his religious and side effect concerns. It concluded that the People had presented clear and convincing evidence to support the fourth *Medina* element. Because ample evidence supports the district court's findings and conclusion, we perceive no error. *See People in Interest of A.J.L.*, 243 P.3d 244, 255 (Colo. 2010).

### III.    Disposition

¶ 14    The order authorizing the involuntary administration of medication is affirmed.

JUDGE FOX and JUDGE BROWN concur.